# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| **SARAH M. FULLER,** | |
| **Plaintiff,** | |
| *vs.* | **CAUSE NO.  1:14-cv-1339-DKL-JMS** |
| **CAROLYN W. COLVIN, Commissioner of Social Security,** | |
| **Defendant.** | |

## ENTRY

Plaintiff Sarah M. Fuller applied for disability-insurance benefits and a period of disability under the Social Security Act, alleging a disability beginning on January 1, 2011. The defendant Commissioner denied her application and Ms. Fuller brought this suit for judicial review of that denial.

## Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. ▪ 405(g); *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).  If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence.  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart,* 360 F.3d 751, 758

1

(7th Cir. 2004).  This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations.  Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner.  Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  *Carradine*, 360 F.3d at 758.  While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*.  *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ▪ 416.905(a).  A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or

whether he would be hired if he applied for work."   42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966.  The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process.  42 U.S.C. ▪§ 423(d)(2)(B) and 1382c(a)(3)(G).  20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further.  At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled.  At the second step, if the applicant's impairments are not severe, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling.  20 C.F.R. ▪ 404.1525.  If the applicant's impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related

3

physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ▪ 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work level, then the grids may not be used to determine disability at that level.  Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics.  *Lee v.*

4

*Sullivan,* 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ▪ 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

## Background

The ALJ found that Ms. Fuller met the insured-status requirement for benefits through June 30, 2015.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (▪ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

At step one of the sequential evaluation process, the ALJ found that Ms. Fuller has not engaged in substantial gainful activity since January 1, 2011, her alleged onset-of-disability date.  At step two, he found that she has the severe impairments of (1) major depressive disorder, (2) anxiety disorder, (3) minimal disc bulges of the lumbar spine, (4) cannabis dependence, and (5) alcohol dependence.  At step three, he found that her impairments, singly or in combination, do not meet or medically equal any of the conditions in the listing of impairments.  He discussed listings 1.04, disorders of the spine, and 12.04, affective disorders.  The ALJ found that Ms. Fuller did not satisfy listing 1.04 because, "among other things," she did not provide evidence that she cannot ambulate effectively.  The ALJ found that she did not satisfy listing 12.04 because her impairment did not satisfy either the paragraph B or C severity criteria.

For the purposes of steps four and five, the ALJ determined Ms. Fuller's RFC.  He found that she retained the capacity for light work with the following additional restrictions:  she is capable of (1) following and remembering simple instructions, (2) making adequate work-related decisions, (3) sustaining concentration on simple tasks, over a normal eight-hour work day, (4) displaying adequate social behavior in the work environment, and (5) her professional interactions would be limited due to anxiety, which means that she is precluded from complex mental tasks.

Relying on the testimony of a vocational expert, the ALJ found that this RFC permits Ms. Fuller to perform her past relevant work as a fast-food worker and inspector

and that she is, therefore, not disabled.  He did not proceed to make an alternate step-five determination.

When the Commissioner's Appeals Council denied Ms. Fuller's request to review the ALJ's decision, his decision became the final decision of the Commissioner on her claim and the one that the Court reviews.

**Discussion**

Ms. Fuller appears to assert seven errors in the ALJ's decision.[2]

**1.  The ALJ ignored or rejected evidence.**  Ms. Fuller asserts that "[t]he denial decision must be reversed because the ALJ ignored or rejected all of the evidence proving she was disabled . . . ."  (*Plaintiff's Brief in Support of Complaint To Review Decision of Social Security Administration* [doc. 21] ("*Plaintiff's Brief*"), at 8.)  Because she only states this conclusion, but does not develop a factual and legal argument in support, the argument is forfeited.

**2.  The ALJ made medical judgments.**  Ms. Fuller argues that the ALJ made medical judgments regarding her psychological conditions which he was not qualified to make.  She cites one example:  "Thus, the ALJ used the technique of citing (R. 29) a statement by the claimant (R. 249-257) and then applying his layperson's psychological interpretation' [*sic*] to conclude that her functioning was not Markedly impaired.  The

---

[2] The first five errors appear in Ms. Fuller's first category.  It is difficult to discern a unifying point to these arguments.

ALJ is thus simply and illegally playing doctor . . . ."  (*Plaintiff's Brief,* at 8-9.)  Page 29 of the record, to which she cites, is part of the "List of Exhibits" at the end of the ALJ's decision; it contains no citation to a statement by Ms. Fuller.  Pages 249 to 257 of the record, which she identifies as her statement, consist of single-page therapist's notes of 8 group and 1 individual therapy sessions with Ms. Fuller at Aspire Indiana Behavioral Health System from August 30, 2010 to October 16, 2010.  As far as the Court can find, the ALJ cited only one of these notes in his decision:  the note of a group therapy session held on October 4, 2010.  (R. 17 (ALJ citing page 58 of Exhibit 2F, which is R. 251).)  He cited it in support of this observation:

> The claimant began group therapy.  The group therapist noted in several records that the claimant did not demonstrate full commitment as evidenced by her lack of consistent participation, her slowness in presenting assignments, and lack of documentation to show that she regularly attended AA meetings.  (Exhibit 2F/58).

(R. 17.)  The pertinent part of the group-therapy note reads:

> The client is making slow progress at this time as evidenced by lack of consistency in attending group/AA, fails to provide feedback during critical presentation of group members, and appears to not connect with the process.  It might be that the client struggles with self-esteem issues coupled with depression and fear of public expression of thoughts/feelings.

(R. 251.)

Neither this therapist note nor any of the others contain any statement by Ms. Fuller.  The ALJ's comments on this note are not part of his discussion of the paragraph B severity criteria for evaluating listing category 12.00, in which he assesses Ms. Fuller's limitations in three functional areas ("marked" being one of the ratings).  Finally, the ALJ's observations of the therapist's comments does not include any assessment of the

8

degree of Ms. Fuller's limitations in any functional category.  In short, Ms. Fuller's argument makes no sense and shows no error.

**3. Inference from failure to obtain treatments.**  Ms. Fuller argues that the ALJ erred by drawing negative inferences from her failures to obtain treatments without first inquiring into explanations for the failures, as required by S.S.R. 96-7p.  She cites three specific instances.  **First**, citing the group therapist's *Termination Summary* note that Ms. Fuller's therapy sessions were terminated because she withdrew, (R. 244), the ALJ wrote that he "finds it reasonable to conclude that the claimant's symptoms improved or resolved if she withdrew from treatment despite it being available to her," (R. 18).  **Second**, according to Ms. Fuller, "[t]he ALJ opined that her lack of psychotherapy while in prison 'significantly undermine the claimant's allegations that she suffers from severe and debilitating symptoms that would preclude all work.[']"  (*Plaintiff's Brief*, at 9-10, quoting ALJ's decision (R. 20).)  **Third**, commenting on the evidence that Ms. Fuller sought treatment for back pain in September 2010 and did not seek treatment again until October 2011, the ALJ wrote that he "has a hard time accepting that the claimant was suffering from severe and disabling symptoms that would preclude even light work while not seeking treatment for a year."  (R. 20.)

Social Security Ruling 96-7p provides that, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed *and there are no good reasons for this failure*."  (Emphasis added.)

The Ruling emphasizes that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  The Ruling specifically anticipates an adjudicator recontacting a claimant after a hearing in order to determine whether there are good reasons for a failure to seek, or to consistently pursue, treatment.[3]

The first and third instances of the ALJ drawing a negative credibility inference from Ms. Fuller's failure to seek, follow, or persist with treatments, without inquiring into her reasons for the failures, are as she describes.[4]  The second instance, however, is not. The ALJ did not "opine[ ] that her lack of psychotherapy while in prison" significantly undermined her credibility.  Rather, he wrote that "*these prison records* tend to significantly undermine the claimant's allegations that she suffers from severe and debilitating symptoms that would preclude all work."  (R. 20 (emphasis added).)  In the preceding paragraph, the ALJ described what "these prison records" showed:  *e.g.*, Ms. Fuller reported to prison providers that she was doing well; a prison provider noted that

---

[3] The Ruling is phrased in the present tense: ". . . in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner."  The same principle would apply to a claimant's past failures to seek or consistently pursue treatments.

[4] On questioning by her attorney at the hearing in April 2013, Ms. Fuller explained that she stopped psychiatric treatment because of her daughter's health and her trying to finish high school, but that, when her high school is done in January 2014, she intended to go back in psychotherapy.  (R. 46.)  It does not appear that this period of non-treatment is one of the instances for which the ALJ drew a negative inference. Ms. Fuller did not mention this explanation in her briefs.

her mood was stable and euthymic; prison providers, including physicians, consistently noted normal mental-status examinations; prison providers consistently noted G.A.F. scores showing mild to moderate symptoms; there was no worsening of her condition noted over several months of incarceration; Ms. Fuller did not report worsening symptoms and request reinstatement of psychotropic medication until August 2012 (her incarceration commenced in March 2012 and ended in September 2012, (R. 19)).  (R. 20.) Although the ALJ also noted that she reported to prison personnel that she stopped her psychotropic medications in November 2011 (months before her incarceration), the majority of "these prison records" which he cited for his credibility inference report more than simply a lack of psychotherapy or a failure to seek or persist with psychiatric treatments; they report affirmative evidence of lack of severe symptoms.

That leaves the first and third instances of the ALJ drawing negative credibility inferences from Ms. Fuller's failure to seek or persist with treatments, without first obtaining an explanation from her.  Because the Commissioner completely failed to address this argument in her response, and the argument is not clearly untenable, the Court construes the Commissioner's silence as a concession of error and the Court agrees that the ALJ erred.  Because it is impossible to determine how much weight these inferences carried in the ALJ's overall credibility determination, the Commissioner's decision must be reversed and Ms. Fuller's claim remanded for reconsideration of her credibility without these two errors.    The Commissioner may either request an explanation from Ms. Fuller for the two instances or drop the two instances, and then

reconsider her credibility (and RFC and disability) in light of the explanation or without the two instances.

**4. Trial work period.** Ms. Fuller argues that the ALJ's reliance on her searching for work as evidence that she is not disabled[5] contravenes the Commissioner's regulation's allowance of a trial work period permitting a disabled person to attempt work without resulting in a determination that she is not disabled. "The trial work period is a period during which you may test your ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). It allows the performance of services for nine months (consecutive or non-consecutive) without having those services considered as evidence that the person's disability has ended. *Id.* Although the Commissioner did not address this argument in her response, the Court notes that the trial work period rule is inapplicable. It falls under the heading "CONTINUING OR STOPPING DISABILITY," 20 C.F.R. § 404.1588; only persons who are entitled to disability-insurance benefits are entitled to a trial work period, 20 C.F.R. § 404.1592(d); and a trial work period begins with the month in which a person becomes entitled to disability-insurance benefits, 20 C.F.R. § 404.1592(e). Thus, it is a rule that applies only after it has been determined that a person is entitled to disability-insurance benefits and it's design is to avoid termination of benefits due to unsuccessful trial work. Because Ms. Fuller has not been determined to

---

[5] (R. 18-19 ("The fact that the claimant was looking for work tends to show that she herself believed she could work"), 24 ("The [RFC] limitations assessed by the undersigned are consistent with . . . the claimant's activities of daily living including looking for work . . . ."), 25 ("In making this determination, the undersigned considered the multiple credibility factors outlined in SSR 96-7p, including . . . the claimant's activities of daily living, which included looking for work.").)

be entitled to benefits, the trial work period does not apply to the ALJ's citation of her seeking work as a reason to find her allegations of disabling symptoms to be not entirely credible.

     **5.   Ignored G.A.F. scores.**   Ms. Fuller argues that the ALJ ignored without explanation, and arbitrarily refused to accept, the Global Assessment of Functioning (G.A.F.) scores of 45 that were assigned to her and which signify disabling-level symptoms.  She contends that the ALJ "apparently" refused to accept the G.A.F. scores because he believed that they are not acceptable evidence of disability, which is inconsistent with precedent in the United States Court of Appeals for the Seventh Circuit. At the hearing, Ms. Fuller's counsel contended that Ms. Fuller is totally disabled due to longstanding anxiety and depression, and post-traumatic stress disorder.  He contended that "she had consistent GAF assessments of 45 which under the DSM-IV indicate an inability to keep a job which indicates total disability."  (R. 39.)  The ALJ concluded that counsel's representation of consistent GAF scores of 45 "is not reflected in the record." (R. 24.)

     Contrary to Ms. Fuller's argument, the ALJ neither ignored nor "arbitrarily refused to accept" her G.A.F. scores of 45.  He mentioned her G.A.F. scores several times in his decision, (R. 17 (score of 45), 70 (45 and 70), 19 (72), 20 (63 and mild/moderate), 24 (45), 25 (improved)), and articulated his evaluation of them, (*e.g.*, R. 18, 19, (scores of 63, 70, and 72 show mild or moderate symptoms); 20 (prison records, including mild to moderate G.A.F. scores, tend to significantly undermine Ms. Fuller's allegations of severe

and disabling symptoms); 24 (assertion that Ms. Fuller received consistent scores of 45 not reflected in the record); 25 (providers noted improved G.A.F. scores)). G.A.F. scores are not controlling on the issue of disability and, in this case, most of Ms. Fuller's assessed G.A.F. scores were above her early "current" score of 45. The ALJ was required to consider all of the evidence of record and he was entitled to evaluate her different G.A.F. scores and their trend.

Ms. Fuller has not shown that the ALJ erred in his consideration of her G.A.F. scores.

**6. Failure to call medical advisor.** Ms. Fuller argues that the ALJ erred by failing to call a medical advisor to give an expert medical opinion on the issue of whether Ms. Fuller's impairments medically equal any of the listings. The state-agency psychologists and physicians completed *Disability Determination and Transmittal* forms, (R. 56, 57), which can supply the required medical-equivalence opinions, *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004); *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004).[6] But Ms. Fuller argues that these forms could not supply the required medical opinions in this case because medical evidence entered the record after the state-agency reviewers completed the forms. The specific later-submitted records — "treatment medical and psychotherapy evaluations from 3-24-11 to 3-22-13" — are exhibits 11F through 14F, (R. 302-410).

---

[6] The state-agency reviewers produced other forms, (R. 278 (*Case Analysis,* on physical condition), 293 (*Physical Residual Functional Capacity Assessment*), 411 (*Psychiatric Review Technique* form ("*PRTF*")), 301 (*Case Analysis,* confirming PRTF)), on which the *D.D.T.*s were based and which also ensure that medical opinion on listings medical equivalence has been obtained, S.S.R. 96-6p.

However, all that Ms. Fuller offers on the significance of these later-submitted records is the conclusory statement "[p]resumably, if they [the state-agency reviewers] had reviewed all of the evidence they would have reasonably determined he [*sic*] was totally disabled." (*Plaintiff's Brief*, at 15.)  The Court cannot simply make that same presumption.  An updated medical opinion must be obtained only "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." S.S.R. 96-6p.  Ms. Fuller has not shown that the ALJ or Appeals Council believed that Exhibits 11F through 14F might have changed the state-agency experts' equivalency findings, or that their failure to so believe was not supported by substantial evidence, through showing the significance of the later evidence in relation to the previously submitted evidence of record.  Thus, she has failed to show that the ALJ erred in not calling for an updated medical opinion on listings equivalence.

**7. Failure to properly assess mental limitations.**  Ms. Fuller argues that the ALJ erred because his "limitation of the work did not address the impact of the claimant's mental limitations," he "failed to account for the claimant's combined mental impairments," and "his residual functional capacity assessment did not accurately describe the claimant's impairments." (*Plaintiff's Brief*, at 18.)  She argues that the ALJ's failure to properly assess her mental limitations corrupted his step-five determination (according to her heading); his step-three determination, because her mental impairments satisfied listings 12.04 and 12.06; and/or his RFC determination.  The ALJ

did not make a step-five determination and Ms. Fuller adds nothing here to her previous listings and general RFC arguments.  She develops no argument.  Thus, she has not shown error.

## Conclusion

The Commissioner's decision will be reversed and remanded for reconsideration of Ms. Fuller's credibility according to the findings, conclusions, and instructions herein.

**DONE this date:** 09/30/2015

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.